UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kristine R. Lindsey,

    Plaintiff,

v.

Commissioner of Social Security,

    Defendant.

_____

Case No. 21-10590
District Judge Stephanie Dawkins Davis
Magistrate Judge Jonathan J.C. Grey

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Kristine R. Lindsey seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Lindsey's application for disability insurance benefits under the Social Security Act. Lindsey filed a motion for summary judgment (ECF No. 11), the Commissioner filed a response and cross-motion for summary judgment (ECF No. 13), and Lindsey replied (ECF No. 15).

For the following reasons, the Court **RECOMMENDS** that Lindsey's motion for summary judgment be **DENIED**, that the Commissioner's motion for

summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

I. **Background**

A. **Procedural History**

On January 24, 2020, Lindsey filed a Title II application for a period of disability and disability insurance benefits. (Tr. 175.[1]) In her application, Lindsey initially alleged that her disability began on August 1, 2012. *Id.* April 29, 2020, her application was denied. (Tr. 83–89). Lindsey subsequently requested reconsideration, and the decision was upheld on June 18, 2020. (Tr. 98–103.) Lindsey requested a hearing, and on October 22, 2020, she appeared with counsel before Administrative Law Judge Lawrence E. Blatnik ("ALJ"), who reviewed the case *de novo*. (Tr. 113–15, 32–59.) At the hearing, Lindsey amended her alleged disability onset date to December 11, 2017. (Tr. 37.)

In a December 16, 2020 decision, the ALJ found that Lindsey was not disabled. (Tr. 15–26). The ALJ's decision became final when the Appeals Council denied review on February 26, 2021. (Tr. 1–4; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004)).

---

[1] The administrative record appears on the docket at ECF No. 9. All references to it are identified as "Tr."

## B. The ALJ's Application of the Disability Framework

Under the Social Security Act, disability insurance benefits and supplemental security income are available only for those who have a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in the disability insurance benefits context); *see also* 20 C.F.R. § 416.905(a) (definition used in the social security income context).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work in view

of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [their] impairments and the fact that [they] are precluded from performing [their] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003.) At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [their] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

Lindsey, born on October 11, 1975, was 42 years old on the alleged disability onset date. (Tr. 60.) She has a high school education, completed one year of college, and has past relevant work as (1) an animal caretaker or kennel attendant and (2) a home health aide. (Tr. 24, 289.)

The ALJ applied the five-step disability analysis and found at step one that Lindsey had not engaged in substantial gainful activity since the alleged onset date of December 11, 2017. (Tr. 18.) At step two, the ALJ found that Lindsey had the following severe impairments: degenerative disc disease of the lumbar spine, an anxiety disorder, and post-traumatic stress disorder. *Id.* At step three, the ALJ

4

found no evidence that Lindsey's impairments met or medically equaled one of the listings in the regulations. (Tr. 18–19.) Next, the ALJ determined that Lindsey has the RFC to perform light work with certain limitations:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). The claimant can lift or carry 20 pounds occasionally and ten pounds frequently. She can sit, stand and walk all for at least six hours. She can frequently, but not constantly, handle and finger with both hands. She can occasionally climb ladders and scaffolds, and frequently climb ramps and stairs. She can perform simple, routine, repetitive tasks, but not at a production rate pace; work that involves only occasional contact or interaction with supervisors, co-workers and the public; and routine work that does not involve frequent, significant workplace changes or adaptions.

(Tr. 20.) At step four, the ALJ found that Lindsey is unable to perform any past relevant work (Tr. 24.) At step five, the ALJ denied Lindsey benefits, finding that there were jobs in significant numbers in the national economy that Lindsey can perform. (Tr. 25–26.)

## II. Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

5

591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citation omitted).

### B. Analysis

Lindsey contends that the ALJ did not properly articulate why Lindsey's PTSD did not medically equal Listing 12.15 and that the ALJ failed to properly evaluate the opinions of Dr. Elaine Tripi and Dr. Wanda Dennis Hugget. (ECF No. 11.) The Commissioner counters that the ALJ's decision should be affirmed because the ALJ appropriately considered Listing 12.15 and that Dr. Tripi and Dr. Hugget's reports did not qualify as medical opinions. (ECF No. 13.)

### 1. The ALJ's Step Three Determination

Lindsey first argues that the ALJ erred by failing to adequately consider whether Lindsey's PTSD medically equals Listing 12.15 (Trauma- and Stressor-Related Disorders) at step three. At step three, Lindsey bears the burden to demonstrate that the severity of her impairments meets or medically equals the severity of a listing. *Jones*, 336 F.3d at 474. Each listing specifies the "objective medical and other findings needed to satisfy the criteria of that listing." *Rabbers v. Comm'r*, 582 F.3d 647, 653 (6th Cir. 2009) (citation and internal quotations

omitted). To show medical equivalency to a listing, a claimant must satisfy all the criteria of that listing. *Id.*

Because there is no listed impairment for PTSD, the ALJ considered Lindey's impairments in the context of Listing 12.15. (Tr. 18). To meet Listing 12.15, a claimant must demonstrate both the A and B criteria below:[2]

> A. Medical documentation of <u>all</u> of the following:
>   1. Exposure to actual or threatened death, serious injury, or violence;
>   2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
>   3. Avoidance of external reminders of the event;
>   4. Disturbance in mood and behavior; and
>   5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>   1. Understand, remember, or apply information.
>   2. Interact with others.
>   3. Concentrate, persist, or maintain pace.
>   4. Adapt or manage oneself.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.15. Additionally, the five incremental ratings for listing evaluations are as follows:

> a. *No limitation (or none).* You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

---

[2] 20 C.F.R. Part 404 lists an alternate way in which to meet Listing 12.15, but Lindsey did not raise the argument that she meets the alternate criteria and therefore waives that argument. <u>Murr v. United States</u>, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (stating that arguments not raised to a magistrate judge are waived).

    b. *Mild limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
    c. *Moderate limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
    d. *Marked limitation*. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
    e. *Extreme limitation*. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

*Id.* at § 12.00(F)(2). Here, the Commissioner conceded that Lindsey meets the Paragraph A criteria, and the parties disagree as to whether Lindsey meets the Paragraph B criteria. (ECF No. 13, PAGEID.1448.) Regarding the Paragraph B Criteria, the ALJ concluded the following: (1) with respect to understanding, remembering, or applying information, Lindsey has mild limitations; (2) with respect to interacting with others, Lindsey has moderate limitations; (3) with respect to concentrating, persisting, or maintaining pace, Lindsey has moderate limitations; and (4) with respect to adapting or managing oneself, Lindsey has moderate limitations. (Tr. 18–19.) The ALJ thus did not find any extreme or marked limitations.

Lindsey specifically asserts that she has marked limitations in two of the four Paragraph B criteria: (1) interacting with others and (2) concentrating, persisting, or maintaining pace. (ECF No. 11, PAGEID.1427.) Interacting with

others refers to "the abilities to relate to and work with supervisors, co-workers, and the public," and concentrating, persisting, or maintaining pace refers to "the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(E).

First, Lindsey contends she has marked limitations with interacting with others because she has had 25 jobs where she experienced difficulty communicating with others; only has a few friends; has been alienated from family, friends, and community; and has difficulty trusting others. (ECF No. 11, PAGEID.1427.) The ALJ first discussed Lindsey's self-reports of having difficulty getting along with others and anger outbursts, citing specific examples. (Tr. 19.) Contrary to Lindsey's assertion, however, the ALJ considered and cited specific reasons for his finding of moderate limitations. The ALJ discussed a March 22, 2018 medical report in which Lindsey stated that she is "very social," is part of a group of mothers from her child's elementary school, and interacts with mothers during playdates. (Tr. 19, 1200.)

The ALJ further noted that Lindsey has acted appropriately with medical providers. (Tr. 19.) The record supports this finding. Medical providers described Lindsey as cooperative, pleasant, or polite in reports from February 2015 (Tr. 737), April 2015 (Tr. 344), May 2016 (Tr. 648), June 2017 (Tr. 627), July 2017 (Tr. 626), August 2017 (Tr. 624), March 2018 (Tr. 1202), and December 2019 (Tr.

321). The ALJ's conclusion that Lindsey has moderate limitations with respect to interacting with others is therefore appropriate.

Second, Lindsey argues that she has marked limitations with concentrating, persisting, or maintaining pace because she has crying spells, gets weekly panic attacks, procrastinates, and experiences confusion and fatigue. (ECF No. 11, PAGEID.1427.) In his decision, the ALJ first noted that Lindsey reported difficulty maintaining focus and completing tasks. (Tr. 19.) However, the ALJ found he could not ascertain whether Dr. Tripi's evaluation, which stated that Lindsey had impaired concentration, was an objective evaluation or Lindsey's self-report to Dr. Tripi. (Tr. 19.)

In support of his conclusion having found only mild and moderate limitations, the ALJ discussed Lindsey's function report dated February 19, 2020, in which Lindsey reported that she drives, grocery shops, prepares meals, manages her finances, cares for her child and pet, and completes household tasks. (Tr. 19, 224–226.) Lindsey also reported that she generally has no difficulty with following instructions. (Tr. 228.) The ALJ also noted that the agency employee who interviewed Lindsey on January 23, 2020 reported that Lindsey had no difficulty with concentration. (Tr. 199.) The ALJ's conclusion that Lindsey has moderate limitations with respect to concentrating, persisting, or maintaining pace is therefore appropriate.

Because Lindsey did not show marked limitation in two of the four areas of mental functioning, substantial evidence supports the ALJ's conclusion that Lindsey did not meet Listing 12.15.

## 2. Medical Opinions

Lindsey contends that the ALJ improperly discredited Dr. Tripi and Dr. Hugget's medical opinions. (ECF No. 11.)

The Social Security regulations describe five different categories of evidence that may be considered, which includes medical opinions and other medical evidence. 20 C.F.R. § 404.1513(a). A "medical opinion" is a "statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions [in certain areas]." *Id.* at § 404.1513(a)(2). In contrast, "other medical evidence" is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* at § 404.1513(a)(3).

Additionally, statements that a claimant is or is not disabled or able to work are improper because that is an issue reserved to the Commissioner. *Id.* at § 404.1520b(c)(3)(i). Those conclusory statements are "inherently neither valuable

12

nor persuasive," and the ALJ has no obligation to analyze those statements. *Id.* at § 404.1520b(c).

### a. Dr. Tripi's Opinions

The Commissioner argues that Dr. Tripi's opinions are not medical opinions. (Tr. 13.) Dr. Tripi conducted three psychosocial assessments of Lindsey. (Tr. 305–307, 1290.) These assessments are from May 2014 (Tr. 289), December 2017 (Tr. 305–307), and October 2020 (Tr. 1290–1293). The May 2014 report outlines Lindsey's personal history and employment history but does not identify specific impairment-related limitations. (Tr. 289.) The December 2017 report outlines the same history, Lindsey's symptoms and diagnoses, and a conclusion that Lindsey is "unemployable." (Tr. 305–307.) The October 2020 report contains the same information and conclusion as the December 2017 report. (Tr. 1290–1293.)

Dr. Tripi's opinions are considered "other medical evidence" because they consist of the severity of her impairments, diagnoses, and medical history. *Id.* at § 404.1513(a)(3). These opinions do not constitute a medical opinion as defined by the Social Security regulations. As the ALJ noted, Dr. Tripi's report "appears to be based exclusively on the claimant's subjective reports." (Tr. 23.) For instance, in the symptoms section of the December 2017 and October 2020 reports, Dr. Tripi stated, "Lindsey indicated that at times she has sudden onsets of intense emotion." (Tr. 306, 1292.) The Sixth Circuit has stated that an ALJ is not required to accept a

claimant's subjective complaints. *Jones*, 336 F.3d at 475. In *McCready v. Comm'r of Soc Sec.*, the court discounted a physician's opinion because their observations were "merely the narrative description of plaintiff's subjective complaints and symptoms and are not opinions regarding plaintiff's limitations or restrictions." 2012 WL 1060088, at *8 (E.D. Mich. 2012), *report and recommendation adopted*, No. 10-13893, 2012 WL 1059747 (E.D. Mich. Mar. 29, 2012). Because Dr. Tripi's opinions largely outlined Lindsey's subjective complaints and failed to discuss objective medical conclusions, the ALJ appropriately discounted Dr. Tripi's opinions. *Id.*

Additionally, Dr. Tripi's conclusion about Lindsey's unemployability is an impermissible conclusory statement that is reserved to the Commissioner. *Id.* at § 404.1520b(c)(3)(i). Accordingly, the ALJ did not err in in declining to adopt Dr. Tripi's findings. *Harrington v. Comm'r of Soc. Sec.,* No. 20-10954, 2021 WL 4205621, at *9 (E.D. Mich. July 7, 2021), *report and recommendation adopted*, No. 20-CV-10954, 2021 WL 3486278 (E.D. Mich. Aug. 9, 2021) (finding that the ALJ was not required to consider a physician's report that stated that the claimant was unemployable).

### b. Dr. Hugget's Opinion

Contrary to Lindsey's argument that the ALJ "completely ignored" Dr. Hugget's opinion, the ALJ discussed Dr. Hugget's opinion in detail. (Tr. 23–24.)

The ALJ pointed to Dr. Hugget's statements that (1) Lindsey has "occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks," and (2) Lindsey can generally function satisfactorily with normal routine behavior, self-care, and conversation. (Tr. 23–24, 298.) The ALJ also noted that the record supports some of Dr. Hugget's findings, including Dr. Hugget's conclusion that Lindsey may have difficulty controlling emotions and getting along with others. (Tr. 24, 298.)

The Commissioner argues that Dr. Hugget opinion is also not a medical opinion. (Tr. 13.) The ALJ appropriately found that Dr. Hugget failed to include detailed limitations on Lindsey's ability to function in a work setting. (Tr. 24.) Because Dr. Hugget did not include restrictions in her opinion, her opinion is not a medical opinion under the Social Security regulations. Moreover, even if Dr. Hugget's opinion was entitled to consideration, the RFC does not contradict Dr. Hugget's finding that Lindsey is capable of "generally functioning satisfactorily" at work.

The Court finds that the ALJ did not err in declining to adopt Dr. Hugget's opinion. Even if this Court might have weighed the evidence differently, this Court finds that substantial evidence supports the ALJ's decision. *Cutlip*, 25 F.3d at 286.

### III. Recommendation

For the forgoing reasons, the Court **RECOMMENDS** that Lindsey's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Dated: April 11, 2022    s/**Jonathan J.C. Grey**
Jonathan J.C. Grey
United States Magistrate Judge

**Notice to the Parties About Objections**

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.